ture of which is the taxation of the profits or income of business avocations. Among well recognized business avocations is the management of many kinds of public exhibitions. Other public exhibitions, although conducted for profit in exceptional instances, are not primarily conducted for this end. It is evident that this distinction was present in the minds of the legislature. Operas, museums, circuses and theatres are particularly mentioned in the statute, and they are all of the class of exhibitions ordinarily presented for profit and managed as business ventures. Closely approximating to theatres and operas are "exhibitions of dramatic or operatic representations, plays, performances, musical entertainments," and to circuses are "feats of horsemanship or acrobatic sports," but with differences which suggest the necessity of a particular enumeration. Then, for greater precision, the statute excepts certain entertainments or exhibitions which might otherwise be deemed included in the class described, but which are usually presented not primarily for profit, but for the education and improvement of the public. Thus it seems that the line is quite clearly defined, between exhibitions which are intended by their projectors for profit, and usually managed as business enterprises, and those which are not followed as business avocations. Fairs, industrial exhibitions and entertainments for charitable purposes, are all of them "shows which are opened to the public for pay," but they are not named and are not within the description of the exhibitions taxed. They are as much so, however, as are horse-races, base-ball matches, regattas, or various other "shows," which might have been subjected to tax. The defendant is not liable to a tax.

Judgment is ordered for the defendant.

UNITED STATES (BULLITT v.). See Case No. 2,128.

## Case No. 14,682.

UNITED STATES v. BURCH.

[1 Cranch, C. C. 36.] [1]

Circuit Court, District of Columbia. July Term, 1801.

INTERNAL REVENUE — SELLING LIQUOR WITHOUT LICENSE—INDICTMENT—SALE BY WIFE.

The day laid in an indictment for selling whiskey is not material. Selling by the wife, with the knowledge and assent of the husband, is the selling of the husband.

Indictment for retailing whiskey without license.

THE COURT was of opinion that the day is not material if the fact be proved to be committed before the indictment found. That the selling by the wife, with the knowledge and assent of the husband, is the selling of the husband.

## Case No. 14,683.

UNITED STATES v. BURCH.

[1 Cranch. C. C. 36.] [1]

Circuit Court, District of Columbia. July Term, 1801.

DISORDERLY HOUSE — INDICTMENT — TIME LAID — FORMER CONVICTION.

1. The time laid in the indictment for keeping a disorderly house is not material.

2. A conviction is a bar to prosecution for all the time previous to the conviction.

Indictment for keeping a disorderly house.

THE COURT was of opinion that the time is not material if before the indictment found. The keeping of a disorderly house is a single offence, and one conviction is a bar to a prosecution for keeping a disorderly house at any time prior to the finding of the indictment.

## Case No. 14,684.

UNITED STATES v. BURDETT et al.

[2 Sumn. 336.] [2]

Circuit Court, D. Massachusetts. May Term, 1836.

CUSTOMS DUTIES—PRODUCT OF FOREIGN FISHING.

Where whales are caught, and oil is manufactured, by the crew of an American vessel, the oil is not the product of "foreign fishing," within the purview of the revenue laws of the United States, though it has since been owned, and brought into port, by persons in a foreign service.

Writ of error from the district court of the United States for the district of Massachusetts.

The original suit was debt on a duty bond. At the trial a bill of exceptions was offered, and signed, in substance as follows: The defendants proved, that the ship Helvetius, a ship of the United States, and owned by certain citizens of the United States, sailed from New London on a whaling voyage, on the 4th of July, 1832. That she went into the Pacific Ocean, and on her voyage took 1,500 barrels of spermaceti oil. The Helvetius, with all this oil on board, was stranded on the coast of Oahee, one of the Sandwich Islands, on the 9th of November, 1834. About one third of the oil was lost when the vessel was wrecked, and the voyage was broken up. Of the oil that was saved, one third went to the salvors. The king of the island, John C. Jones (the consul of the United States), and French & Co. were the salvors. The said Jones, and French & Co. were citizens of the United States, then residing on the said island, and transacting business there. The share of the oil belonging to the king, in manner aforesaid, was sold to William S. Hinckley, who is a native citizen of the United States. The crew of the Helvetius were paid off in oil, and their share, being about

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Charles Sumner, Esq.]